Marc H. Stofman, Esquire (MS 9065)
KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, NJ   08002
(856) 486-7900
Attorneys for Plaintiffs

| | |
|---|---|
| INDUSTRIAS DESAFIO, INC. and INDUSTRIAS DESAFIO, SA de CV, | : UNITED STATES DISTRICT COURT : FOR THE DISTRICT OF NEW JERSEY : |
| Plaintiffs, vs. | : Civil Action No. : : |
| ECKO COMPLEX, LLC. and SWEAT EQUITY LABORATORIES, LLC, Defendants. | : : COMPLAINT : : : |

Plaintiffs, Industrias Desafio, SA de CV ("Desafio, SA") and Industrias Desafio, Inc. ("Desafio, Inc."), by way of Complaint against the Defendants, Ecko Complex, LLC ("Ecko") and Sweat Equity Laboratories, LLC ("Sweat Equity"), states as follows:

### THE PARTIES

1.   Desafio, SA is a corporation organized and existing under the laws of Mexico with a principal place of business located at Av. Revolucion S/N, Santa Cruz Atizapan EDO de Mexico, 52500  Mexico.

2.   Desafio, Inc. is a corporation organized and existing under the laws of the State of Florida with a principal place of business located at 550 Biltmore Way, #103, Coral Gables, Florida 33134.

3.   At all times relevant to the causes of action asserted herein, Desafio, Inc. acted as the agent of Desafio, SA in the United States, pursuant to the scope and authority granted by Desafio, SA.

4. Sweat Equity is a New Jersey limited liability company with a principal place of business located at 1 Martin Avenue, South River, New Jersey 08882.

5. Ecko is a New Jersey limited liability company with a principal place of business located at 1 Martin Avenue, South River, New Jersey 08882.

6. Upon information and belief, Sweat Equity is a wholly owned subsidiary of Ecko.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by virtue of the complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 as to each Defendant.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(a) because all of the Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims stated herein occurred in this District.

9. In addition, venue is appropriate in this Court because the parties have consented to the exclusive jurisdiction of the District Court for disputes arising out of, or related to the contract at issue in this action.

## NATURE OF THE CASE

10. This is an action by the Plaintiffs for the virtual destruction of their business caused by the Defendants breach of their obligations under an Equipment Purchase Agreement and related Preferred Supplier Agreement. The Defendants induced the Plaintiffs to purchase all of Defendants' sophisticated silk screening and fabric printing equipment for approximately $3,000,000.00 based upon the Defendants' guarantee that they would purchase at least eighty (80%) percent of their proprietary brand menswear tee shirt printing and production requirements for a period of five (5) years. In reliance on this guaranty, the Plaintiffs expended substantial

2

additional resources to build and fit-out a new facility in Mexico to house the equipment and meet the projected production needs of the Defendants.

11. However, within months after the equipment purchase was completed, the Defendants breached their obligations under the Preferred Supplier Agreement and refused to order any more products from the Plaintiffs.

12. In addition, the Defendants have failed and refused to pay for in excess of $3,500,000.00 worth of goods ordered and shipped prior to the Defendants' breach.

## FACTUAL BACKGROUND

13. Ecko and Sweat Equity were in the business of, among other things, manufacturing and selling specialty silk screen and embroidered apparel under the brand name "Ecko Unlimited."

14. According to their website, Ecko has focused their apparel line towards the hip-hop and youth culture, developing strong brand recognition in this consumer base which resulted in reported billings of over $300 million in its men's sportswear division alone in 2002.

15. Beginning in or around the third quarter of 2003, Sweat Equity and Ecko began negotiations with Desafio regarding a contemplated transaction whereby Desafio would purchase all of the Plaintiff's equipment used to produce their Ecko Unlimited tee shirts and then transfer the equipment and the printing operations to a new facility in Mexico. As part of the contemplated transaction, Ecko and Sweat Equity guaranteed that they would order at least eight (80%) percent of their yearly quota of Ecko Unlimited tee shirts from Desafio for a period of five (5) years. In addition, Desafio would hire a number of Sweat Equity's and Ecko's former employees to assist with the transfer of the equipment to Mexico and train Desafio's employees on how to use equipment.

## THE EQUIPMENT PURCHASE AND PREFERRED SUPPLIER AGREEMENT

16.     After negotiating the basic parameters of the contemplated transaction, the Defendants sent Desafio a proposed agreement.  However, the Defendants altered the payment terms to provide that only $1,800,000.00 of the total purchase was to be paid directly to the Defendants, while the remaining $1,200,000.00 was to be paid to two individuals in Austria, Messrs. Josef Poandl and Radivoje Dizdarevic, as commission for allegedly brokering the transaction.

17.     On or about September 15, 2003, Sweat Equity and Desafio, SA entered into an Equipment Purchase and Preferred Supplier Agreement (the "Agreement").  A true copy of the Agreement is attached hereto as Exhibit A.

18.     Pursuant to Section 2.1 of the Agreement, Sweat Equity agreed to sell, and Desafio, SA agreed to purchase all of Sweat Equity's owned and leased equipment used in the printing of the Ecko Unlimited tee shirts (the "Equipment").

19.     Pursuant to Section 3.1 of the Agreement, Desafio, SA agreed to pay $1,800,000.00 directly to Sweat Equity for the Equipment.

20.     On or about March 10, 2004, Desafio, SA and Messrs. Poandl and Dizarevic executed a separate agreement pursuant to which Desafio, SA agreed to pay the balance of the purchase price, $1,200,000.00, directly to those individuals, "in consideration for [their] assistance in brokering the transaction between [Desafio, SA and Sweat Equity], which resulted in the execution of the [Agreement]" (the "Supplemental Agreement").  A true copy of the Supplemental Agreement is attached hereto as Exhibit B.

21.     Pursuant to Section 6.1 of the Agreement, Desafio, SA agreed to hire, for a period not less than one (1) year, up to four (4) individuals designated by Sweat Equity who would be

fired by Sweat Equity upon the closing of the Agreement to provide Desafio, SA with training for its employees on the use of the Equipment.

22.     Pursuant to Section 6.2 of the Agreement, Sweat Equity agreed to treat Desafio, SA as a "Preferred Supplier" for a period of five (5) years after the closing on the Agreement. Preferred Supplier is defined by section 1.29 of the Agreement as, "a supplier which shall supply a minimum of eighty (80%) of Ecko Complex LLC's Ecko Unltd. Menswear tee shirt printing and production requirements, provided that such supplier has fulfilled the Requirements, as such term is defined in Section 6.2(a)."

23.     Pursuant to Section 6.2(a) of the Agreement, the "Requirements" referenced in the Preferred Supplier provision includes certain quality standards, timely shipping requirements and pricing parameters that Desafio, SA agreed to comply with to retain its Preferred Supplier status.

24.     Pursuant to Section 6.2(b) of the Agreement, Sweat Equity required Desafio, SA to agree to treat Sweat Equity as its "most favored customer," requiring Desafio, SA to: (i) give Sweat Equity equivalent or better terms offered to Desafio, SA's other customers, and (ii) give Sweat Equity's orders priority over the orders of other customers.

25.     Pursuant to Section 7.2 of the Agreement, Sweat Equity agreed to indemnify Desafio, SA and its affiliates against and hold them harmless from, "any and all damage, claim, loss, Liability and expense (including, without limitation, reasonable expenses of investigation and attorneys' fees and expenses) (collectively, "Damages") incurred or suffered by [Desafio, SA or its affiliates] arising out of or relating to (i) any material breach of any representation, warranty, covenant or other agreement of the Seller contained [in the Agreement] . . ."

26. Pursuant to Section 8.5 of the Agreement, the parties agreed that the laws of the State of New Jersey would govern the validity, interpretation and effect of the Agreement.

27. Pursuant to Section 8.7 of the Agreement, each of the parties consented to the exclusive jurisdiction of New Jersey State or Federal District Courts for any action related to or arising out of the Agreement.

28. Pursuant to the signature page of the Agreement, Ecko also executed the Agreement to guaranty Desafio, SA's status as a Preferred Supplier pursuant to the terms of Section 6.2 of the Agreement.

## THE FACTORING AGREEMENT

29. In order to finance the tee shirt printing and production operations, Desafio, SA and Desafio, Inc. entered into a factoring agreement with Sun Trust Bank ("SunTrust"), whereby SunTrust would purchase all accounts receivable created by the sales of goods to Sweat Equity (the "Factoring Agreement").

30. As inducement for SunTrust to enter into the Factoring Agreement, on or about December 1, 2003, Effy Zinkin, the Senior Vice President of Ecko, wrote a letter to SunTrust confirming that Sweat Equity and Ecko had entered into a five (5) year preferred supplier agreement with Desafio, SA whereby Sweat Equity and Ecko agreed to buy from Desafio, SA, "full package printed Men's T-Shirts with the ECKO UNLTD. Logo." Mr. Zinkin further represented that the average anticipated projected monthly volume is 400,000 units per month. Mr. Zinkin also confirmed that the current purchase orders for the first quarter of 2004 were in the approximate volume of 500,000 units per month at an average price of $5.00 per unit totaling approximately $7,500,000.00 in orders. A true copy of the December 1, 2003 letter to SunTrust is attached hereto as Exhibit C.

6

## SWEAT EQUITY AND ECKO BREACH THE AGREEMENT

31. Within months after the Desafio, SA had completed the purchase of the Equipment and hired the designated employee trainers, Sweat Equity and Ecko failed to comply with their obligations under the Preferred Supplier provisions of the Agreement.

32. Despite the fact that Desafio, SA complied with all of the quality, delivery and pricing Requirements under the Preferred Supplier provisions of the Agreement, Sweat Equity and Ecko failed to give Desafio, SA the minimum eighty (80%) of their tee shirt orders as required under Section 6.2 of the Agreement.

33. Moreover, Mr. Eli Reinitz and other representatives of Sweat Equity and Ecko openly admitted that they never had any intention of complying with their obligations under the Preferred Supplier provisions of the Agreement, and always intended to place orders with whichever vendor or supplier gave them the cheapest price.

34. In addition to Sweat Equity's and Ecko's failure to comply with their obligations under the Preferred Supplier provisions of the Agreement, Sweat Equity and Ecko have failed and refused to pay for over $3,500,000.00 worth of products purchased from Desafio, SA prior to their breach of the Preferred Supplier provisions of the Agreement.

## COUNT ONE-BREACH OF CONTRACT

35. Plaintiffs incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

36. Sweat Equity's and Ecko's failure to place at least eighty (80%) of their tee shirt orders constitutes a breach of the Preferred Supplier provisions of the Agreement.

37. The Plaintiffs have, at all times, complied with the quality, delivery and pricing Requirements of the Preferred Supplier provisions of the Agreement.

38.     The Plaintiffs have incurred substantial economic damages as a direct and proximate result of the breaches of the Preferred Supplier provisions of the Agreement by the Defendants.

39.     Further, Sweat Equity's and Ecko' failure to pay for the over $3,500,000.00 worth of goods they ordered from the Plaintiffs and which were delivered to the Defendants constitutes a breach of contract.

40.     The Plaintiffs have incurred substantial additional damages as a direct and proximate result of the Defendants' breaches of their obligations to pay for the goods that were ordered and delivered.

WHEREFORE, Plaintiffs Desafio, SA and Desafio, Inc. hereby demand judgment against the Defendants Sweat Equity and Ecko, jointly and severally, as follows:

    A.     For compensatory, consequential and incidental damages;

    B.     For attorneys fees and costs of suit; and

    C.     Such other and further relief as the Court deems equitable and just.

## COUNT TWO-BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

41.     Plaintiffs incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

42.     Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing.

43.     Sweat Equity and Ecko breached their duties of good faith and fair dealing to the Plaintiffs under the Agreement by reason of the conduct described above.

44. As a direct and proximate result of Sweat Equity's and Ecko's breaches of their duties of good faith and fair dealing, the Plaintiffs have suffered, and continue to suffer, substantial damages.

WHEREFORE, Plaintiffs Desafio, SA and Desafio, Inc. hereby demand judgment against the Defendants Sweat Equity and Ecko, jointly and severally, as follows:

    A. For compensatory, consequential and incidental damages;

    B. For attorneys fees and costs of suit; and

    C. Such other and further relief as the Court deems equitable and just.

## COUNT THREE-UNJUST ENRICHMENT

45. Plaintiffs incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

46. As the result of the actions described above, Sweat Equity and Ecko have been unjustly enriched at the expense of the Plaintiffs.

47. The actions of Sweat Equity and Ecko were sufficiently willful, wanton and malicious to justify the award of punitive damages.

WHEREFORE, Plaintiffs Desafio, SA and Desafio, Inc. hereby demand judgment against the Defendants Sweat Equity and Ecko, jointly and severally, as follows:

    A. For compensatory, consequential and incidental damages;

    B. For punitive damages in an amount determined by the Court;

    C. For attorneys fees and costs of suit; and

    D. Such other and further relief as the Court deems equitable and just.

## **COUNT FOUR-FRAUDULENT MISREPRESENTATION**

48. Plaintiffs incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

49. Sweat Equity and Ecko induced the Plaintiffs to enter into the Agreement based upon the Defendants' promise and guaranty to comply with the Preferred Supplier provisions of the Agreement.

50. In reasonable reliance upon the Defendants' representations, the Plaintiffs agreed to pay in excess of $3,000,000.00 for all of the Defendants' printing equipment and expended considerable additional costs to set up the new production facility in Mexico.

51. Based upon the admissions of their own representatives, Sweat Equity and Ecko never intended to comply with the Preferred Supplier provisions of the Agreement.

52. Therefore, the representations made by Sweat Equity and Ecko in negotiating and executing the Agreement were knowingly false at the time they were made, and were made with the specific intent to induce the Plaintiffs to enter into the Agreement.

53. The actions of Sweat Equity and Ecko were sufficiently willful, wanton and malicious to justify the award of punitive damages.

WHEREFORE, Plaintiffs Desafio, SA and Desafio, Inc. hereby demand judgment against the Defendants Sweat Equity and Ecko, jointly and severally, as follows:

      A. For recission of the Agreement and Supplemental Agreement;

      B. For compensatory, consequential and incidental damages;

      C. For punitive damages in an amount determined by the Court;

      D. For attorneys fees and costs of suit; and

E.	Such other and further relief as the Court deems equitable and just.

          KLEHR, HARRISON, HARVEY,
           BRANZBURG & ELLERS LLP
          Attorneys for Plaintiffs


By:  /s/ Marc H. Stofman_____
      Marc H. Stofman, Esquire

Dated:  October 26, 2004
13399-0001/CHYH1-46788 v.2

11